■ SAA-A, INC., Doing Business as GLOBAL INFORMATION TECHNOLOGIES, Respondent-Appellant, v MORGAN STANLEY DEAN WITTER & Co., Formerly Known as MORGAN STANLEY & Co., Appellant-Respondent. [721 NYS2d 640] —Order, Supreme Court, New York County (Barry Cozier, J.), entered December 8, 2000, brought up for review pursuant to CPLR 5517 (b) by cross appeals from an order, same court and Justice, entered on or about March 10, 2000, which, upon reargument, denied defendant's motion for summary judgment dismissing the first, second and sixth causes of action and granted the motion with respect to the third, fourth and fifth causes of action, unanimously modified, on the law, to the extent appealed from as limited by the briefs, by granting the defense motion with respect to all causes of action and dismissing the complaint and, except as so modified, affirmed, without costs. Motion seeking an order to dismiss, or permitting plaintiff to withdraw, so much of the cross appeal challenging the dismissal of the third and sixth causes of action denied.

Defendant Morgan Stanley Dean Witter & Co. appeals from so much of Supreme Court's order as denied its motion to dismiss plaintiff's first, second and sixth causes of action. Plaintiff SAA-A, Inc. cross-appeals from so much of the order as granted defendant's motion to dismiss the third, fourth and fifth causes of action. The court's dismissal of the seventh and eighth causes of action is not disputed.

Pursuant to a written contract dated July 3, 1995, plaintiff, doing business as Global Information Technologies, agreed with defendant Morgan Stanley to develop and implement a training program, designated "NT for Unix Administrators," together with related software and reference materials (collectively, courseware). The governing fee schedule (Schedule A) sets plaintiff consultant's fee at "$2,000/day inclusive of all costs and materials." The contract contains a merger clause providing that it "cannot be changed unless mutually agreed upon in writing by both parties." Under the description of plaintiff's duties, the contract recites: "The parties may agree on the provision of additional training services and courseware

by CONSULTANT by executing additional schedules to this Agreement." The agreement limits defendant company's liability, with certain exceptions not pertinent here, to "the amount due consultant from company for services performed and accepted by company under the schedule then in effect." It further provides that Morgan Stanley Dean Witter & Co. "may discontinue the use of CONSULTANT's services with or without reason or cause, at any time immediately upon written notice to CONSULTANT," in which event the company is obliged to pay "for all work performed in accordance with the terms and conditions hereof up to the date of termination."

Plaintiff does not contend that any additional schedules were executed for additional training services. Rather it alleges: 1) that defendant's training manager orally represented that Morgan Stanley would compensate plaintiff for the development costs of the training program in the amount of $500,000; 2) that defendant is liable in quantum meruit for the reasonable value of its work in such amount; 3) that it sustained damages by reason of defendant's failure to implement the program, as agreed, in the amount of $2,192,000; 4) that defendant's training manager represented that Morgan Stanley would pay the cost of development; 5) that defendant's agents insisted plaintiff devote its entire corporate resources to development of the program, as a result of which plaintiff was required to forego other business opportunities, sustaining injury in the amount of $6,000,000; and 6) that defendant illegally appropriated course materials produced by Microsoft Corp. for use in place of the materials to have been furnished by plaintiff, as a result of which it sustained damages of at least $1,000.

Plaintiff has adopted a familiar strategy of stating a cause of action for breach of contract in numerous guises, presumably in the hope that a court will find merit to at least one of its disparate theories of relief (see, McMahan & Co. v Bass, 250 AD2d 460, 462 [lv denied and dismissed 92 NY2d 1013], citing Megaris Furs v Gimbel Bros., 172 AD2d 209, 211; Stendig, Inc. v Thom Rock Realty Co., 163 AD2d 46, 47). Unfortunately for plaintiff, it is immediately apparent that the writing governing this dispute obligates defendant to do no more than pay for such training services as it utilizes on a per diem basis and imposes no obligation to assume any development costs associated with the NT for Unix Administrators training program. This provision is particularly disadvantageous to plaintiff in light of the "Work for Hire" provision (17 USC § 101), which vests intellectual property rights in any materials developed in

conjunction with the training program in defendant Morgan Stanley. As plaintiff points out, the written provision is inconsistent with the affidavit of defendant's training manager, which asserts that such rights accrue to plaintiff, which then "would be able to sell this course to other customers." However, the ownership of the courseware is not at issue, and defendant is entitled to the benefit of its bargain, however one-sided, as defined by the written contract.

The first cause of action must be dismissed. The parol evidence rule bars admission of antecedent or contemporaneous oral representations to vary or add to the terms of a written agreement (*see, Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 368-369, *appeal withdrawn* 89 NY2d 1031; *Moloney v Weingarten*, 118 AD2d 836, 837, *lv denied* 69 NY2d 608). Moreover, where the contract requires any amendments to be evidenced by a writing subscribed by the parties, oral modification is prohibited by statute (General Obligations Law § 15-301; *Rose v Spa Realty Assocs.*, 42 NY2d 338, 343). Even if, in the absence of proof, partial performance under the purported modification is assumed, plaintiff's performance is not unequivocally referable to the oral modification so as to obviate the requirement for a writing (*Rose v Spa Realty Assocs., supra*, at 345). In fact, the alleged modification obligates plaintiff to do no more than it was already required to do under the terms of the written agreement and, thus, plaintiff cannot claim that its performance was induced by reliance on the promise of further compensation (*Taylor v Blaylock & Partners*, 240 AD2d 289, 290; *IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.*, 152 AD2d 451, 453).

The second cause of action is also deficient. As this Court has stated, "where there is an express contract no recovery can be had on a theory of implied contract" (*Hohenberg Co. v Iwai New York*, 6 AD2d 575, 578). "Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*" (*La Rose v Backer*, 11 AD2d 314, 320, *amended* 11 AD2d 969, *affd* 11 NY2d 760). Having failed to establish equitable estoppel, plaintiff is bound by the contract (*Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 388; *G & S Custom Homes v Holtz*, 179 AD2d 1025, 1026; *Unisys Corp. v Hercules Inc., supra*, at 367).

While it purports to seek a greater amount (based on failure of implementation of the training program rather than cost of its development), the third cause of action is predicated on the same occurrences and transactions as the first and is therefore

duplicative (*see, Rockefeller Univ. v Tishman Constr. Corp.,* 240 AD2d 341, 343, *lv denied* 91 NY2d 803). The fourth and fifth causes of action merely add detail to the allegation that defendant, through its training manager, made the alleged oral promises to incur the cost of development and to implement the training program on a firm-wide basis and are likewise duplicative (*see, McMahan & Co. v Bass, supra,* at 462).

The basis of plaintiff's sixth cause of action is not entirely clear. It is apparently predicated on an unspecified and unrelated agreement to provide instruction to defendant's employees under the Microsoft System Engineers training program. It asserts that defendant substituted a "bootlegged version of the * * * copyrighted [Microsoft] courseware" for the official training manual it was required to purchase from plaintiff. However, the only agreement between the parties is the Training Services Agreement contained in the record. It states simply, "Courseware to be Provided: Participant manuals and software as needed for courses." The contract imposes no obligation to utilize plaintiff's instructors to train any particular number of employees or to continue any training program for a prescribed duration. To the contrary, defendant is expressly afforded the option to terminate plaintiff's services at any time and for any or no reason. Thus, whatever factors may be said to have contributed to defendant's decision, discontinuance of the use of plaintiff's instructors to conduct the Microsoft System Engineers training course was in accordance with the terms of the contract. Plaintiff cannot therefore recover for lost sales resulting from defendant's subsequent substitution of alternative course materials.

Lastly, there is no merit to plaintiff's effort to limit the scope of review by way of a motion to withdraw so much of its cross appeal as challenged the dismissal of the third and sixth causes of action, which were reinstated by Supreme Court upon reargument subsequent to perfection of the appeal. CPLR 5517 (a) (1) provides that an appeal is "not * * * affected" by a subsequent order upon reargument, and CPLR 5517 (b) empowers the Court to review the subsequent order where it is appealable as of right. Accordingly, defendant's motion is denied. Concur—Rosenberger, J. P., Tom, Ellerin, Rubin and Buckley, JJ.