■ GETTINGER ASSOCIATES, L.P., et al., Respondents, v ABRAHAM KAMBER COMPANY LLC, Appellant. [920 NYS2d 75]—

Order, Supreme Court, New York County (Debra A. James, J.), entered June 11, 2010, which, to the extent appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing the fourth, sixth and seventh causes of action of the complaint in the action entitled *1407 Broadway Real Estate LLC v Abraham Kamber & Company LLC*, unanimously reversed, on the law, with costs, and the motion granted.

This consolidated action arises primarily from the service of a number of notices of default by defendant as sublessor in connection with its sublease of a 43-story commercial building to plaintiff Gettinger Associates, LLP (Gettinger). Gettinger assigned the sublease to plaintiff 1407 Broadway Real Estate LLC (Broadway) for $122 million in January 2007.

A notice of default, dated July 21, 2006, alleged that the building was not maintained in thorough repair. An 11-page schedule of defects included severe deterioration of the roof, "[a]ntiquated and deteriorated windows throughout" and "[m]ain electric service inadequate for modern requirements."

Subsequent notices of default alleged failure to comply with sections of the sublease requiring the sublessor's approval for renovations, alterations or changes costing more than $50,000, and for obtaining a performance bond. Defendant also served Gettinger with a notice to cure for improperly assigning the sublease.

In 2006, Gettinger commenced a *Yellowstone* action against defendant. On or about September 4, 2007, Broadway, asserting seven causes of action, commenced an action for declaratory judgment and damages. The gravamen of the complaint was that defendant had breached the sublease and committed intentional torts against Broadway and its predecessor, Gettinger, in an attempt to wrongfully terminate plaintiffs' leasehold interest. The actions were subsequently consolidated.

On or about May 26, 2009, defendant moved for summary judgment dismissal of the second through seventh causes of action. The court denied the motion as to the fourth, sixth and seventh causes of action for tortious interference with a prospective sub-sublease, for breach of the covenant of good faith and fair dealing, and for breach of the covenant of quiet enjoy-

ment. For the following reasons, we now reverse and dismiss these causes of action in their entirety.

The fourth cause of action for tortious interference with a prospective sub-sublease must be dismissed since plaintiffs failed to establish that defendant's interference was accomplished by wrongful means or motivated solely by malice (*Snyder v Sony Music Entertainment*, 252 AD2d 294, 299-300 [1999]). Contrary to plaintiffs' argument, the sublease did not require defendant to issue a nondisturbance agreement (NDA) at no cost; hence, the failure to do so does not constitute sufficient "wrongful means" to support a claim for tortious interference (*see e.g. Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183 [1980]). Moreover, plaintiffs submitted nothing more than the self-serving affidavit of Gettinger's principal in support of their assertion that their prospective sub-sublessee would not enter into a lease without an NDA or an estoppel certificate. This bare assertion is insufficient to raise an issue of fact as to whether the sub-sublease would have been consummated "but for" defendant's refusal to provide the document (*see Slatkin v Lancer Litho Packaging Corp.*, 33 AD3d 421 [2006]). In any event, plaintiffs allege that defendant's conduct was motivated by a desire to purchase the leasehold. Thus, defendant's conduct could not be motivated solely by malice.

The sixth cause of action for breach of the covenant of good faith and fair dealing also must be dismissed. It is well established that a covenant of good faith and fair dealing is implicit in all contracts (*see Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995]). This covenant "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications*, 222 AD2d 17, 22-23 [1996]).

Here, Gettinger alleged that the covenant was breached essentially by the "issuing [of] repeated but unjustified notices of default," and "intrusive and unreasonable" inspections of the premises. The propriety of the issuance of the July 21, 2006 default notice is heavily disputed by the parties. However, defendant met its burden of establishing that certain defective conditions listed in the default notice existed at the time the notice was served. These included the windows, which thereafter underwent a $4 million replacement; the electrical system (Broadway's engineers found that the main electric switchboards were "antiquated, obsolete and dangerous"); the elevators, which underwent a modernization program after Broadway's

engineers found that certain testing of the elevators provided "very poor" results; the exterior brickwork, which the building manager testified was in the cited defective condition at the time the notice was served; and the roof, which the building manager testified was also in the cited defective condition when the notice was served. Thus, plaintiff cannot show that the July 21, 2006 notice of default was unjustified notwithstanding that evidence in the record creates a triable issue of fact as to some of the other defective conditions listed in the 11-page schedule of defects. Even if incorrectly cited, those alleged defective conditions still could not render the notice of default unjustified or issued in bad faith given that some basis existed for the issuance. Moreover, the fact that certain items may have been corrected before service of the July 21, 2006 notice is not evidence of bad faith in the absence of proof that defendant, an out-of-possession sublessor, knew that the conditions had been cured.

Further, plaintiffs' claim that certain other default notices were based on mere "technical" violations is also unsupported as "[t]he violation of an express covenant not to make any alterations without the landlord's permission is a violation of a substantial obligation of the tenancy" (*Haberman v Hawkins*, 170 AD2d 377, 377-378 [1991] [internal quotation marks and citations omitted]). It is undisputed that Gettinger did not provide plans and specifications and obtain approval prior to the performance of the "alterations, rebuildings, replacements, changes, additions, and improvements" listed in certain of the default notices. It is further undisputed that Gettinger did not provide the requisite bonds prior to the issuance of the notices. Hence, defendant properly served notices arising out of the breach of those provisions of the sublease. Plaintiffs' argument that the relevant sublease section exempted mandated regulatory work and "routine" maintenance and repairs is unsupported by the language of the sublease. Similarly, defendant's inspections of the premises, which were allowed by the sublease and which, in a prior action, the court found did not breach the covenant of good faith and fair dealing, cannot serve as the basis for such a claim here.

The seventh cause of action, alleging a breach of the covenant of quiet enjoyment also must be dismissed given that plaintiffs failed to establish an actual or constructive eviction from the premises (*see Jackson v Westminster House Owners Inc.*, 24 AD3d 249 [2005], *lv denied* 7 NY3d 704 [2006]; *Dinicu v Groff Studios Corp.*, 257 AD2d 218 [1999]). Concur—Mazzarelli, J.P., Friedman, Catterson, DeGrasse and Manzanet-Daniels, JJ. **[Prior Case History: 2010 NY Slip Op 31398(U).]**